**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

OneSky Litigation Trust

    v.                                          Civil No. 10-cv-344-LM

Justin B. Sullivan; and
Justin and Marianne Sullivan,
Trustees of the Marianne
Sullivan Revocable Trust of 2009

**O R D E R**

OneSky Litigation Trust ("OneSky Trust") has sued in six
counts, seeking to recover for Justin Sullivan's alleged
violation of a Stipulation and Injunction Order issued by the
New Hampshire Superior Court that concluded an action brought
against Sullivan by his former employer, OneSky Network, LLC
("OneSky Network").  In the state court, OneSky Network had sued
Sullivan for, among other things, misappropriating its
confidential proprietary information.  Before this court are:
(1) OneSky Trust's motion for summary judgment as to liability
on four of its six claims; and (2) defendants' motion to compel.
Both motions are duly opposed.  For the reasons that follow,
OneSky Trust's motion for summary judgment is denied, and
defendants' motion to compel is granted in part and denied in
part.

## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The object of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

**Background**

From July of 2006 through May of 2007, Justin Sullivan ("Sullivan") was the vice president of sales for OneSky Network, a company that helped travelers book flights on private jets. OneSky Network terminated Sullivan for diverting its customers to a competing business, for his own personal benefit.  Shortly after OneSky Network terminated Sullivan, he went to work for one of his former employer's competitors.  Thereafter, OneSky Network sued Sullivan in the New Hampshire Superior Court.  That suit was resolved by means of a Stipulation and Injunction Order ("stipulation-order") that provided, in pertinent part, that Sullivan was to

> (a) immediately return to Plaintiff OneSky Network . . . any and all information, electronic data, files, documents, materials, computers, equipment or other property of any nature whatsoever that is owned by OneSky [Network] (including but not limited to trade secrets or confidential information) and in the possession, custody or control of Sullivan or any of his employees, servants, attorneys, agents and representatives, or other persons in active concert or participation with him (such information shall include  but not be limited to customer lists and lists of customer prospects), and (after returning such materials) delete all such electronic data from any computer, hard drive or other storage device within his possession, custody or control; [and]

> (b) not retain or use any electronic or hard copies of any such information including customer lists and lists of prospects.

Pl.'s Mot. Summ. J., Ex. 1, Attach. B[1] (doc. no. 27, at 33).  The
stipulation-order also required Sullivan not to: (1) solicit
business from certain individuals from August 3, 2007, through
November 2, 2007, id. at 33-34; or (2) "disclose or use any of
the information concerning customers or customer prospects
included in OneSky's database; provided, however, that [he] has
the right to solicit and conduct business with any person or
entity, so long as he does not use or disclose information
contained in OneSky's database to do so," id. at 34.  The
stipulation-order was executed by OneSky Network and Sullivan on
August 2, 2007, id. at 36, and became an order of the court on
the following day, id. at 33.

In 2009, a federal criminal investigation into unauthorized
access to OneSky Network's e-mail servers resulted in searches
of Sullivan's home and the home of one of his business
associates.  At about the time Sullivan's associate's home was
searched, Justin and Marianne Sullivan executed a quitclaim deed
conveying their interests in a property in Norwell,
Massachusetts, to themselves, as trustees of the Marianne

---

[1] Exhibit 1 to OneSky Trust's memorandum of law in support
of its summary judgment motion is the affidavit of Gregory
Johnson.  Appended to Exhibit 1 are ten documents, referred to
by plaintiff as "Exhibits" A-J.  In the interest of avoiding any
confusion to readers that could result from citing a document
that is an exhibit to an exhibit, this order refers to the
documents appended to Exhibit 1 as "Attachments" A-J.

Sullivan Revocable Trust of 2009.  Two days after Sullivan's home was searched, the deed was recorded.

In its complaint, OneSky Trust represents that, in some manner left undescribed, it has acquired the right to litigate certain causes of action otherwise belonging to OneSky Network.[2] OneSky Trust, in turn, asserts that Sullivan has violated the Superior Court stipulation-order by retaining OneSky Network's confidential information and using that information to solicit and contract with OneSky Network's customers and prospects. OneSky Trust has sued in six counts, pressing claims for: fraud (Count I); violation of New Hampshire's Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. ("RSA") § 358-A (Count II); unjust enrichment (Count III); enhanced compensatory damages (Count IV); larceny (Count V); and fraudulent conveyance (Count VI). The complaint does not indicate whether OneSky Network ever moved the Superior Court to find Sullivan in contempt for violating the stipulation-order.[3]

---

[2] The question of standing comes to mind, but as defendants do not raise that issue, there is no cause for the court to pursue it.

[3] Moreover, while defendants do not raise this issue, it is not clear that the stipulation between OneSky Network and Sullivan could even continue in existence as an enforceable contract after the judge in the Superior Court made the stipulation an order of the court.  Of course, OneSky Trust does not bring a breach of contract action, which is the way settlement agreements are typically enforced.  See Poland v. Twomey, 156 N.H. 412, 414 (2007) ("Settlement agreements are

**Discussion**

OneSky Trust now moves for summary judgment on Counts I-IV. While OneSky Trust's memorandum of law refers to three exhibits, it appears that only one exhibit was actually attached to that memorandum. OneSky Trust represents that Exhibit 3, which it did not attach to its memorandum, consists of interrogatories to which Sullivan responded by invoking his Fifth-Amendment privilege against self-incrimination. The primary evidence on which OneSky Trust relies is drawn from the affidavit of Gregory Johnson, the president of OneSky Network at all times relevant to this action. According to Johnson:

> On January 16, 2008, only five months after the Court's injunction order issued, Sullivan forwarded an e-mail in which he wrote, "I grabbed a random 300 names from the OS data base and sent them our survey." A true and accurate copy of this e-mail is attached . . . as Exhibit C hereto.

> On April 12, 2008, in response to a question about the Court Order prohibiting his possession of OneSky's database, Sullivan wrote: "Yes- I can go after my clients, but I do not have their database, remember?" A true and accurate copy of this e-mail is attached . . . as Exhibit D hereto.

> On November 14, 2008, in response to a request to inventory and organize customer lists, Sullivan wrote, "This is fine, but please do not intimate to anyone that I have OneSky's intellectual property. There is no statute of limitations on a civil lawsuit." A true

---

contractual in nature and, therefore, are generally governed by principles of contract law.") (citation omitted). But, the claims OneSky Trust does bring are premised largely, if not totally, on Sullivan's alleged violations of the stipulation-order.

> and accurate copy of this e-mail is attached . . . as Exhibit E hereto.
>
> On December 24, 2008, when responding to a question as to the marketing source of three new customers, Sullivan wrote: "All 3 from onesky(sic). We should send them a fruit basket or something."  A true and accurate copy of this e-mail is attached . . . as Exhibit F hereto.

Pl.'s Mot. Summ. J., Ex. 1 (Johnson Aff.) ¶¶ 32-35 (doc. no. 27, at 7-8).  Johnson's affidavit does not indicate how he acquired, or has personal knowledge of, e-mails sent by Sullivan after he stopped working for OneSky Network.

Defendants object to OneSky Trust's motion for summary judgment and also move to compel plaintiff to answer certain interrogatories and produce certain documents.  In their objection to summary judgment, defendants address the claims raised in Counts I-IV on the merits, and also advance four other arguments: (1) OneSky Trust's claims are pre-empted by New Hampshire's Uniform Trade Secrets Act; (2) the court should not draw an adverse inference, at summary judgment, from Sullivan's invocation of his Fifth-Amendment privilege; (3) the evidence on which OneSky Trust relies is insufficient to support a determination of liability on Counts I-IV; and (4) OneSky Trust has failed to produce discovery materials, to which defendants are entitled, that would allow them to defend against summary judgment.  Defendants' arguments on the merits of each of the

four claims at issue are persuasive, and dispositive of OneSky
Trust's motion for summary judgment.

A. Count I

In Count I, OneSky Trust asserts that Sullivan is liable
for fraud because he told OneSky Network that he was in
compliance with the stipulation-order and would continue to
abide by it, thus lulling OneSky Network into a false sense of
security and leading it to settle its claims against Sullivan
and not to take further action to protect its confidential
information and intellectual property.  In its memorandum of
law, OneSky Trust argues that by intentionally violating the
stipulation-order, Sullivan committed fraud by: (1) agreeing to
"immediately return" OneSky Network's confidential information
but later using that information, thus demonstrating that he
"obviously" had no intention of returning it in the first place;
(2) "represent[ing] that he did 'not retain or use any
electronic or hard copies of [OneSky Network's] information
including customer lists and prospects,'" while knowing that
representation to be false, Pl.'s Mem. of Law (doc. no. 25-1),
at 9 (citation omitted); and (3) "represent[ing] that he would
'not disclose or use any of the information concerning the
customers or customer prospects included in OneSky's data,'"

while having no intention of keeping that promise, id. (citation omitted).

Sullivan argues that OneSky Trust has produced no evidence that he ever intentionally made any materially false statements to OneSky Network.  Specifically, he argues that while the four e-mails on which OneSky Trust relies could be construed as evidence that he breached the promises he made in the stipulation-order, OneSky Trust has produced no evidence that at the time he made promises to OneSky Network, he did not intend to abide by them.

"To establish fraud, a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it."  Snierson v. Scruton, 145 N.H. 73, 77 (2000) (citing Patch v. Arsenault, 139 N.H. 313, 319 (1995)).  However, "a promise is not a statement of fact and hence cannot, as such, give rise to an action for misrepresentation."  Thompson v. H.W.G. Group, Inc., 139 N.H. 698, 700-01 (1995) (quoting Hydraform Prods. Corp. v. Am. Steel & Alum. Corp., 127 N.H. 187, 200 (1985)).  On the other hand, "a promise can imply a statement of material fact about the promisor's intention and capacity to honor the promise."  Thompson, 139 N.H. at 701 (citation omitted).  Thus, "a promise . . . will only give rise to a claim of misrepresentation [or

fraud] if, at the time it was made, the defendant had no intention to fulfill the promise." Id. (citation omitted); see also Munson v. Raudonis, 118 N.H. 474, 477 (1978) ("If the speaker makes a promise and at the same time intends not to perform, this operates as a misrepresentation of the speaker's state of mind and is a proper basis for an action in deceit.").

As a preliminary matter, it is important to note that all three of the alleged misrepresentations in this case are promises rather than ordinary statements of fact.  While OneSky Trust appears to characterize the second of those promises, i.e., the one stated in section 1(b) of the stipulation-order, as a statement of fact, a correct reading of the quoted language, in context, demonstrates that it, like the other alleged false statements, was a representation concerning what Sullivan agreed to do in the future, not a statement about any then-current state of affairs.

OneSky Trust is not entitled to judgment as a matter of law on Count I because it has not produced any evidence that, at the time Sullivan executed the stipulation-order, he did not intend to fulfill the promises he made therein.  OneSky Trust points out, correctly, that proof of fraud "may be founded upon circumstantial evidence." Snow v. Am. Morgan Horse Ass'n, Inc., 141 N.H. 467, 468 (1996) (quoting Caledonia, Inc. v. Trainor, 123 N.H. 116, 124 (1983)).  But, still, circumstantial evidence

of an intent not to keep a promise must amount to something more than evidence of a subsequent breach of that promise.  See Hydraform, 127 N.H. at 200 ("mere proof of breach of promise, whether or not the promise is a contractual term, will not support an action for misrepresentation") (citing Munson, 118 N.H. at 477; W. Prosser, The Law of Torts 762-63 (5th ed. 764)).  If that were not the case, "every contract action would automatically acquire a tandem count in tort, and the tort claim would render nugatory any contractual limitation on liability." Hydraform, 127 N.H. at 200 (citations omitted).  Because OneSky Trust points to nothing more than evidence concerning Sullivan's failure to abide by the stipulation-order,[4] and has produced no evidence of his state of mind at the time he executed that document, OneSky Trust is not entitled to judgment as a matter of law on Count I.

---

[4] In its memorandum of law, OneSky Trust makes much of Sullivan's invocation of his Fifth-Amendment privilege against self-incrimination in his answers to its interrogatories, and it points to those invocations as evidence of Sullivan's intent not to keep his promises.  But, while OneSky Trust refers to those interrogatory answers as Exhibit 3 to its memorandum of law, it has submitted no Exhibit 3.  As a consequence, the question of what Sullivan's interrogatory answers do or do not demonstrate about his intent is not before the court.  Sullivan also invoked the Fifth Amendment in his answer to OneSky Trust's complaint, document no. 18, which OneSky Trust appears to refer to as Exhibit 2 to its memorandum of law.  While Sullivan's answer is a part of the court's record, thus excusing OneSky Trust's failure to attach it to its memorandum, the answer to a complaint, unlike interrogatory answers, has no evidentiary value at summary judgment.  See Fed. R. Civ. P. 56(c)(1)(A).

### B. Count II

In Count II, OneSky Trust asserts that Sullivan violated the New Hampshire Consumer Protection Act by: (1) failing to return or delete OneSky Network's confidential information, as required by the stipulation-order; (2) using the OneSky Network database, in violation of the stipulation-order; (3) converting OneSky Network's property to his own personal use, in violation of the stipulation-order; (4) concealing his unlawful retention and use of OneSky Network's intellectual property; and (5) soliciting OneSky Network customers and prospects listed in documents he agreed not to use or possess in the stipulation-order.  Defendants argue that: (1) the court should not consider the evidence on which OneSky Trust's motion relies, i.e., the four Sullivan e-mails appended as Attachments C-F to Johnson's affidavit, due to insufficient authentication; and (2) OneSky Trust has produced no evidence of Sullivan's intent, which is a necessary element of a CPA claim.  Defendants' first argument, which OneSky does not dispute in its reply, is meritorious.

The Federal Rules of Civil Procedure ("Federal Rules") provide that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The Federal

Rules further provide that "[a] party may object that the
material cited to support or dispute a fact cannot be presented
in a form that would be admissible in evidence." Fed. R. Civ.
P. 56(c)(2). "Documents supporting or opposing summary judgment
must be properly authenticated." Carmona v. Toledo, 215 F.3d
124, 131 (1st Cir. 2000) (citation omitted). A party's "failure
to authenticate precludes [the court's] consideration of [that
party's] supporting documents." Id. Regarding the specifics of
authentication:

> In order to authenticate materials not yet part of the
> court record so that they may be considered on summary
> judgment, the party generally must meet a two-prong
> test: (1) the materials must be attached to and
> authenticated by an affidavit or declaration that
> complies with Rule 56[(c)(4)]; and (2) the affiant or
> declarant must be a competent witness through whom the
> materials could be received into evidence at trial.

James Wm. Moore, Moore's Federal Practice § 56.14[2][c], at 56-
218 (3d ed. 2010) (citing Carmona, 215 F.3d at 131).

Here, Johnson states in his affidavit that Attachments C,
D, E, and F thereto are true and accurate copies of e-mails sent
by Sullivan. Those e-mails were all sent to Greg Raiff of JPS
Group. See Pl.'s Mot. Summ. J., Ex. 1, Attachs. C, D, E, and F
(doc. no. 27, at 39, 42, 46, and 48). The problem is that
Johnson, who describes himself as the president of OneSky
Network, gives no indication of how he would be a competent
witness for the introduction of e-mails Sullivan sent to Greg

Raiff at JPS Group.  Accordingly, those four e-mails are not properly before the court.  As those e-mails are the only evidence on which OneSky Trust relies in support of its request for summary judgment on its CPA claim, its motion must be denied as to Count II.[5]

### C. Count III

In Count III, OneSky Trust asserts that Sullivan was unjustly enriched as a result of his unlawful use of OneSky Network's confidential information.  In its memorandum of law, OneSky Trust sets out the elements of unjust enrichment, states that "the material facts are not in dispute and need not be repeated," and cites, as evidentiary support, three paragraphs from Sullivan's answer to its complaint.  Pl.'s Mem. of Law, at 21.  In opposition, Sullivan argues that OneSky Trust has produced no evidence that his conduct resulted in any benefit to him or any loss to OneSky Network.  The court agrees.  Thus, OneSky trust is not entitled to judgment as a matter of law on Count III.

### D. Count IV

Count IV is a claim for enhanced compensatory damages. OneSky Trust argues that it is entitled to enhanced compensatory

---

[5] There is also a serious question as to whether any of the conduct on which OneSky Trust bases its CPA claim falls within the ambit of that statute.

damages because the undisputed facts demonstrate that Sullivan's actions were wanton and malicious. Because Sullivan has not been found liable under any of the legal theories advanced in Counts I, II, and III, there is no basis for reaching the question of damages. Accordingly OneSky Trust is not entitled to judgment as a matter of law on Count IV.

### Motion to Compel

At the same time they objected to OneSky Trust's motion for summary judgment, defendants filed a motion to compel OneSky Trust to give substantive answers to ten interrogatories and to produce various documents. OneSky Trust objects to defendants' motion to compel.

"Unless otherwise limited by court order, the scope of discovery . . . [extends to] any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The court "must limit the frequency or extent of discovery otherwise allowed" if and when it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some

> other source that is more convenient, less
> burdensome, or less expensive;
>
> (ii)  the party seeking discovery has had ample
>        opportunity to obtain the information by
>        discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery
>        outweighs its likely benefit . . . .

Fed. R. Civ. P. 26(b)(2)(C).

"[T]he purpose of pretrial discovery is to 'make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" Wamala v. City of Nashua, No. 09-cv-304-JD, 2010 WL 3746008, at *1 (D.N.H. Sept. 20, 2010) (quoting Macaulay v. Anas, 321 F.3d 45, 53 (1st Cir. 2003)).  In this court, the party moving to compel discovery over an adversary's objection bears the burden of showing that the information he seeks is relevant and not privileged.  Id. at *2; see also Saalfrank v. Town of Alton, No. 08-cv-46-JL, 2009 3578459, at *3 (D.N.H. Oct. 27, 2009).

With the foregoing principles as a backdrop, the court turns defendants requests for interrogatory answers and document production.

A. Interrogatories

In Interrogatory #6, defendants asked OneSky Trust to "identify the makes and models of any and all aircraft which

were or are available to OneSky customers and prospective

customers."  Defs.' Mot. to Compel (doc. no. 32), at 4.  OneSky

Trust provided the following response:

> As Mr. Sullivan is aware, the OneSky Litigation Trust
> did not and does not make aircraft available.
> Presumably, defendants seek information about aircraft
> made available previously by the OneSky Network, LLC.
> The OneSky Litigation Trust does not have direct
> knowledge of this and therefore must refer the
> defendants to Mr. Gregory Johnson, who, it believes,
> has the requisite knowledge to respond.  Mr. Johnson
> is equally available to the parties via deposition
> subpoena.  The plaintiff, thus, objects to this
> interrogatory as unduly burdensome.

Id.  The nine other interrogatories and answers at issue are

similar to the interrogatory and answer quoted above.

Defendants ask the court to compel OneSky Trust to provide

substantive answers to the ten interrogatories set forth in its

motion, arguing that OneSky Trust's current answers are

unreasonable.  Defendants also point out that in the definition

section of their interrogatories, they defined "OneSky" to

include both OneSky Trust and OneSky Network.  OneSky Trust

objects to that definition, which it characterizes as being

contrary to the Federal Rules, which allow interrogatories to be

directed only to parties to an action.  In other words, OneSky

Trust argues: (1) it is the only proper target of

interrogatories; (2) the information defendants seek is known to

OneSky Network and its agents (including Gregory Johnson), but

not to OneSky Trust; and (3) defendants must obtain the

information they seek by issuing a deposition subpoena to Johnson.

OneSky Trust's attempt to evade defendants' interrogatories is precisely the kind of blindman's bluff the discovery rules were intended to circumvent.  In any event, notwithstanding OneSky's existential sophistry, its refusal to provide substantive answers to defendants' interrogatories ultimately rests on an objection that collecting the requested information from Johnson is unduly burdensome.  That objection rings hollow in light of the fact that OneSky Trust was able to have Johnson verify its complaint, and was able to obtain a ten-page affidavit from Johnson to which approximately eighty-five pages of documentary evidence were attached.  Any burden imposed on OneSky Trust to procure answers to defendants' interrogatories will be minor in comparison with the efforts OneSky Trust has already exerted to collect information from Johnson for its own purposes.  Accordingly, to the extent defendants seek substantive answers to their interrogatories, their motion to compel is granted.

B. Requests for Production of Documents

Defendants also ask the court to compel OneSky Trust to comply with their requests for document production.  OneSky Trust has so far withheld some documents from defendants,

declining to turn them over until defendants agree to a
confidentiality agreement under which Sullivan's counsel would
be allowed to examine the documents but Sullivan himself would
be allowed little or no access to them.  According to OneSky
Trust, "it should be patently clear why Plaintiff does not under
any circumstances want to share confidential business
information with the Defendants."  Pl.'s Obj. (doc. no. 35) ¶ 7.
OneSky Trust elaborates: "Defendants' claim that Plaintiff is in
reality pursuing trade secret claims implies a recognition that
this case involves confidential commercial information that
Plaintiff has good reason to keep secret."  Id. ¶ 10.

OneSky Trust's need for secrecy is puzzling.  According to
OneSky Trust's answers to defendants' interrogatories, OneSky
Trust: (1) "did not respond to any trip inquiries," Defs.' Mot.
to Compel, at 3; (2) "did not engage in any transactions," id.;
(3) "did not engage in any sales," id. at 4; (4) "did not and
does not make aircraft available," id.; (5) "did not and does
not provide services to customers or prospective customers,"
id.; (6) "did not provide trips," id. at 5; (7) "did not book
trips," id.; and (8) "does not have customers and does not
solicit customers," id.  If OneSky Trust does no aircraft-rental
business, and has done no such business, it far from clear what
interests OneSky Trust seeks to protect by denying defendants
access to information about the business operations of an

entirely separate entity, OneSky Network.  By presenting itself
as a complete stranger to OneSky Network with respect to
defendants' interrogatories while simultaneously acting as if it
is OneSky Network with respect to defendants' request for the
production of documents, OneSky Trust gives the impression that
its approach to discovery is more gamesmanship than a principled
good-faith attempt to protect legitimate interests.

In the final analysis, however, the court is unable to
resolve the parties' dispute over document production.  Unlike
the portion of defendants' motion to compel that deals with
interrogatories, the portion that deals with document production
does not comply with LR 37.1(a).  That makes it all but
impossible for the court to sort out this dispute, especially
where the parties cannot even seem to agree upon what kind of
access defendants are actually asking for.  Compare Defs.' Mot.
to Compel, at 9 ("Defendants respectfully respect that this
Court: . . . [c]ompel OneSky's discovery production of documents
. . . pursuant to a protective order that . . . disallows
Sullivan to take notes pertaining to, or retain copies of, the
information marked as 'Highly Confidential Information'")
(emphasis added), with Pl.'s Obj. ¶ 9 ("Defendants, on the other
hand, want Plaintiff to agree to allow the very person it
believes stole OneSky Network's proprietary information to
review yet more proprietary information and take notes on it.")

(emphasis added).  In addition, without adequate documentation

of what led to this dispute, it is difficult to know precisely

what documents are at issue.  To the extent defendants seek the

production of documents, their motion to compel is denied

without prejudice to filing a properly supported motion seeking

the same relief.

## Conclusion

For the reasons given above, OneSky Trust's motion for

summary judgment, document no. 25, is denied, and defendants'

motion to compel, document no. 32, is granted in part and denied

in part.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge


August 26, 2011

cc:  Coleen M. Penacho, Esq.
     Edward J. Sackman, Esq.
     Andrew R. Schulman, Esq.
     Andru H. Volinsky, Esq.
     Gretchen Leah Witt, Esq.