**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

OneSky Litigation Trust

    v.                                    Civil No. 10-cv-344-LM

Justin B. Sullivan; and
Justin and Marianne Sullivan,
Trustees of the Marianne
Sullivan Revocable Trust of 2009

**O R D E R**

OneSky Litigation Trust ("OneSky Trust") has sued in six counts, seeking to recover for Justin Sullivan's alleged violation of a Stipulation and Injunction Order issued by the New Hampshire Superior Court that concluded an action brought against Sullivan by his former employer, OneSky Network, LLC ("OneSky Network"). Before this court is defendants' motion for summary judgment. OneSky Trust objects. For the reasons that follow, defendants' motion for summary judgment is granted.

**Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light

most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor." Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

### Background

In their memorandum of law, defendants incorporate a short and concise statement of material facts to which they apply their legal arguments.  They hasten to point out, however, that several of those facts are conceded only for purposes of summary judgment, and will be contested at trial, should there be one. OneSky Trust identifies no factual dispute that would require a trial, but, rather, defends against summary judgment on legal grounds.  That said, the court briefly sketches the relevant factual background.

From July of 2006 through May of 2007, Justin Sullivan ("Sullivan") was the vice president of sales for OneSky Network, a company that helped travelers book flights on private jets. While so employed, Sullivan violated a written agreement with OneSky Network by diverting its customers to a competitor, for his own benefit, and by disclosing the identities of certain OneSky Network customers to that same competitor.  In response, OneSky Network terminated Sullivan's employment.  A month later, he went to work for a competitor.  Thereafter, OneSky Network

sued Sullivan in the New Hampshire Superior Court.  It sought
preliminary and permanent injunctive relief and asserted claims
for breach of contract, violation of New Hampshire's version of
the Uniform Trade Secrets Act ("NHUTSA"), breach of fiduciary
duty, interference with contractual relations, conversion, and
violation of the New Hampshire Consumer Protection Act ("CPA").

OneSky Network's claims against Sullivan were resolved by a
settlement agreement that required Sullivan to: (a) return
certain equipment and confidential information to OneSky
Network, including trade secrets such as lists of customers and
customer prospects, and then to "delete all such electronic data
from any computer, hard drive or storage device within his
possession, custody or control," Defs.' Mot. Summ. J., Ex. A
(doc. no 55-2), at 33); (b) "not retain or use any electronic or
hard copies of any such information including customer lists and
lists of customer prospects," id.; (c) refrain from soliciting
business from certain individuals for a specified period of
time; and (d) not "disclose or use any of the information
concerning customers or customer prospects included in OneSky's
database; provided, however, that [he had] the right to solicit
and conduct business with any person or entity, so long as he
[did] not use or disclose information contained in OneSky's
database to do so," id. at 34.  Finally, the agreement provided

3

for cross-releases by OneSky Network and Sullivan, and for OneSky Network's claims against Sullivan to be dismissed with prejudice.  OneSky Network and Sullivan executed the agreement on August 2, 2007, and it became an order of the court on the following day.

When he executed the agreement, Sullivan had no intention of rendering the performances the agreement required from him. He subsequently violated the court order by retaining OneSky Network's lists of customers and customer prospects and by soliciting individuals on those lists for his own benefit and for the benefit of his new employer.

In 2009, a federal criminal investigation into unauthorized access to OneSky Network's e-mail servers resulted in a search of the home of Lawrence Marino, one of Sullivan's co-workers, and a search of Sullivan's own home.  One day before the search of Marino's home, or on the day of that search, Justin and Marianne Sullivan executed a quitclaim deed conveying their interests in a property in Norwell, Massachusetts, to themselves, as trustees of the Marianne Sullivan Revocable Trust of 2009.  Two days after Sullivan's home was searched, the deed was recorded.

Based on the foregoing, OneSky Trust sued in six counts. The complaint, filed on August 6, 2010, asserted claims for:

fraud (Count I); violation of the CPA, N.H. Rev. Stat. Ann.
("RSA") § 358-A (Count II); unjust enrichment (Count III);
enhanced compensatory damages (Count IV); larceny (Count V); and
fraudulent conveyance (Count VI).  In their answer, defendants
identified eleven affirmative defenses upon which they might
rely, including failure to state a claim.  Their answer does
not, however, list preemption as an affirmative defense.

## Discussion

Defendants move for summary judgment on all six of OneSky
Trust's claims, arguing that: (1) the fraud claim (Count I)
fails as a matter of law because OneSky Trust has identified no
harm that OneSky Network suffered as a result of Sullivan's
alleged misrepresentation(s); (2) Counts I-V are all preempted
by the NHUTSA, RSA chapter 350-B; (3) the CPA claim (Count II)
is barred by the Noerr-Pennington doctrine, see E. R.R.
Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127
(1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657
(1965); (4) the unjust enrichment claim (Count III) is without
merit because OneSky Trust has an adequate remedy at law; (5)
the larceny claim (Count V) fails because the federal statute
cited in the complaint does not establish a private cause of
action; and (6) the claims for enhanced compensatory damages
(Count IV) and fraudulent conveyance (Count VI) are remedies

rather than free-standing causes of action and must fail, as a result of the failure of the claims stated in Counts I-III and V.  OneSky Trust disagrees, categorically.

A. Intentional Misrepresentation

In Count I, OneSky Trust asserts that Sullivan is liable for fraud, or intentional misrepresentation, in the following way:

> Among other things, as a result of Sullivan's intentional and material false statements, to wit, that he was and would be in compliance with the Court Order, OneSky settled its claims against Sullivan and was "lulled" by this and other fraudulent conduct into believing that its confidential information and intellectual property remained protected, thus failing to undertake any further legal or business action that would assure it that Sullivan was in fact in compliance with the Court Order.
>
> Furthermore, by intentionally and willfully violating the Court Order and converting OneSky's confidential and intellectual property for his own personal use and denying OneSky of the exclusive use of its property, Sullivan defrauded OneSky.[1]

Ver. Compl. (doc. no. 1) ¶¶ 39-40.

OneSky Trust refers to Sullivan's "intentional and material false statements," but it does not specifically identify the

---

[1] In footnote 1 of its verified complaint, OneSky Trust explained that it was describing Sullivan's conduct while he was still an employee of OneSky Network "to provide a context to the Court Order of August 3, 2007, the breach of which is the foundation of the claims stated herein."  Ver. Compl. (doc. no. 1), at 3 (emphasis added).

statements Sullivan allegedly made, the person or persons to
whom he made them, when he made them, or how he did so.  Such
details, however, are generally necessary to properly state a
claim for intentional misrepresentation.  See Tessier v.
Rockefeller, 162 N.H. 324, 332 (2011) ("In order to withstand a
motion to dismiss, the plaintiff [asserting a claim for
intentional misrepresentation] must specify the essential
details of the fraud, and specifically allege the facts of the
defendant's fraudulent actions.") (quoting Jay Edwards, Inc. v.
Baker, 130 N.H. 41, 46-47 (1987) (emphasis in the original)).
While it appears that OneSky Trust may be claiming that Sullivan
is liable for making false statements both before and after he
executed the settlement agreement, by alleging that he said
"that he was and would be in compliance with the Court Order,"
Ver. Compl. ¶ 40 (emphasis added), the complaint's lack of
specificity limits Count I to a claim that Sullivan is liable
for fraud because he promised to abide by the settlement
agreement while intending to violate it.  In other words, OneSky
Trusts makes no adequate factual allegation that Sullivan ever
said, at any time after he executed the settlement agreement,
that he was then in compliance with the court order.

Sullivan moves for summary judgment on Count I, arguing
that: (1) OneSky Trust has identified injuries resulting from

his violation of the Superior Court's order but has identified no injury that OneSky Network suffered as a result of being tricked into entering into the agreement on which that court order was based; and (2) OneSky Trust's misrepresentation claim is preempted by the NHUTSA.  In response, OneSky Trust: (1) challenges the applicability of the authorities on which Sullivan relies for his first argument; (2) contends that Sullivan waived his preemption defense by failing to plead it in the answer; and (3) argues that Sullivan's preemption defense fails on the merits.

Sullivan has the better argument.  The court begins with preemption and then turns to the issue of OneSky Network's alleged injuries.

### 1. Preemption by the NHUTSA

The NHUTSA provides causes of action against those who misappropriate trade secrets.  <u>See</u> RSA 350-B:2 & 3.  The statute includes the following relevant definitions:

> I. "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

> II. "Misappropriation" means:

> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

   (1) Used improper means to acquire knowledge of the trade secret; or

   (2) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it; or acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

RSA 350-B:1.  Finally, the NHUTSA provides that, subject to certain exceptions, it "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  RSA 350-B:7, I.  However, the NHUTSA's preemption provision does not affect:

   (a) Contractual remedies, whether or not based upon misappropriation of a trade secret; [or]

   (b) Other civil remedies that are not based on misappropriation of a trade secret.

RSA 350-B:7, II.

### a. Waiver

OneSky Trust argues that defendants waived Sullivan's NHUTSA preemption defense by failing to include it in their answer to the verified complaint.  The court does not agree.

The Federal Rules of Civil Procedure provide that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c).  The rule goes on to enumerate eighteen affirmative defenses to which it applies, from accord and satisfaction to waiver.  See id. "While preemption is not listed specifically in [that] enumeration, it is a 'matter constituting an avoidance,' and, thus, ordinarily comes within the ambit of the rule."  Williams v. Ashland Eng'g Co., 45 F.3d 588, 593 n.7 (1st Cir. 1995) (citations omitted), abrogated on other grounds by Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 138 (1st Cir. 2000).

Normally, an affirmative defense "is deemed waived unless raised in the answer."  Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003) (citations omitted).  "Rule 8(c) is designed to provide plaintiffs with adequate notice of a defendant's intention to litigate an affirmative defense, thereby affording an opportunity to develop any evidence and offer responsive arguments relating to the defense."  Davignon, 322 F.3d at 15 (citing Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1226 (1st Cir. 1994)).  "Hence, a defendant who fails to assert an affirmative defense at all, or who asserts it in a largely uninformative way, acts at his peril."  Williams, 45

10

F.3d at 593 (citing <u>FDIC v. Ramirez-Rivera</u>, 869 F.2d 624, 626

(1st Cir. 1989)).

On the other hand, however, "[u]nder the liberal pleading

regime prescribed by the Federal Rules of Civil Procedure, non-

compliance with . . . procedural rules [such as <u>Rule 8(c)</u>] does

not always preclude consideration of unpleaded claims or

defenses." <u>Haseotes v. Cumberland Farms, Inc. (In re Cumberland</u>

<u>Farms, Inc.)</u>, 284 F.3d 216, 226 (1st Cir. 2002).  As the court

of appeals further explained:

> However, "[w]hile the Federal Rules reflect a
> universal trend away from stereotyped pleading, they
> do not presage abandonment of the requirements that
> parties be given reasonable advance notice of the
> major issues to be raised." <u>Jakobsen</u> [<u>v. Mass. Port</u>
> <u>Auth.</u>], 520 F.2d [810,] 815 [(1st Cir. 1975)].
> Accordingly, courts will excuse untimeliness only when
> doing so is consistent with the notice purpose of the
> rules.  Amendment may be permitted, for example, where
> the opposing party already had notice of the defense
> through some means other than the pleadings, or would
> not have benefitted from advance notice in any event —
> in other words, where the delay was harmless.

<u>Cumberland Farms</u>, 284 F.3d at 226.

OneSky Trust relies on <u>Williams</u> to support its argument

that defendants waived Sullivan's preemption defense by failing

to assert it their answer to the complaint.  In <u>Williams</u>, the

court pointed out that while the defendant's "answer did not

specifically mention a preemption defense, it did contain a

broader Rule 12(b)(6) defense that was capable of encompassing

preemption." 45 F.3d at 593.  Here, too, defendants' answer
included a Rule 12(b)(6) defense.  In Williams, the court went
on to rule that the absence of a specifically articulated
preemption defense in the defendant's answer did not constitute
a waiver of that defense:

> In determining whether general, non-specific
> language in a defendant's answer, as was used here,
> suffices to preserve an affirmative defense, an
> inquiring court must examine the totality of the
> circumstances and make a practical, commonsense
> assessment about whether Rule 8(c)'s core purpose — to
> act as a safeguard against surprise and unfair
> prejudice — has been vindicated.  In this case, USF &
> G complied with the spirit, if not the letter, of Rule
> 8(c).  Well before the close of discovery — and six
> months prior to the filing of the cross-motions for
> summary judgment — USF & G wrote to appellants and
> amplified its position, asseverating that count 2
> should be dismissed under Rule 12(b)(6) because ERISA
> preempted section 29.  In the papers accompanying the
> cross-motions for summary judgment, both sides briefed
> the preemption issue.  Thus, no ambush occurred.

45 F.3d at 593.

OneSky Trust distinguishes Williams by noting that unlike
the defendant in that case, defendants did not raise Sullivan's
preemption defense by letter before filing their motion for
summary judgment.  That may be, but four and a half months
before defendants filed the motion for summary judgment
currently before the court, they filed an objection to OneSky
Trust's May 3, 2011, motion for summary judgment.  In that
objection, they devoted approximately four pages to an argument

that OneSky Trust's claims are preempted by the NHUTSA.
Defendants' objection to OneSky Trust's motion for summary
judgment must surely count as the functional equivalent of the
letter in <u>Williams</u>.  Accordingly, Sullivan's preemption defense
is properly before the court.

### b. Merits of the Preemption Defense

Defendants argue that because the gravamen of Count I is
that Sullivan is liable for the misappropriation and use of
OneSky Network's trade secrets, OneSky Trust's claim is
preempted by the NHUTSA.  OneSky Trust counters:

> The chief conduct complained of is thus not that Mr.
> Sullivan improperly used confidential information, but
> rather that he did not comply with the stipulated
> order and knew he was not going to comply with the
> order when he signed it.  Mr. Sullivan's knowledge of
> his false representations and intent that Plaintiff
> rely on them are factual elements different than those
> required to prove trade secret misappropriation, and
> OneSky's Fraud claim should not be preempted.

Pl.'s Mem. of Law (doc. no. 58-1), at 12.[2]  The court is not
persuaded.

In <u>Mortgage Specialists, Inc. v. Davey</u>, 153 N.H. 764
(2006), the New Hampshire Supreme Court outlined the principles

---

[2] OneSky Trust draws that argument, verbatim, from its June
14, 2011, reply to defendants' objection to its summary judgment
motion.  That is yet further evidence that OneSky Trust has not
been unfairly surprised or prejudiced by Sullivan's assertion of
a preemption defense in the motion for summary judgment
defendants filed on October 14, 2011.

that govern its application of the preemption provision of the
NHUTSA.  The court began by stating that "[w]hether a particular
claim is preempted by the NHUTSA turns on whether the claim
'conflicts' with the NHUTSA."  Id. at 778 (citation omitted).
"The majority of courts that have examined this issue have not
relied upon the label attached to the claim, but have examined
the facts underlying the claim to determine whether it is
preempted by the UTSA."  Id. (citing Burbank Grease Servs., LLC
v. Sokolowski, 693 N.W.2d 89, 99 (Wis. Ct. App. 2005); Weins v.
Sporleder, 605 N.W.2d 488, 491 (S.D. 2000); Bliss Clearing
Niagara, Inc. v. Midwest Brake Bond Co., 270 F. Supp. 2d 943,
946-47 (W.D. Mich. 2003)).  The court further explained:

> In determining whether a claim "conflicts" with
> the [NH]UTSA, we agree with the majority of courts,
> which have looked to the facts alleged or proved in
> support of the claim and have found that the claim is
> preempted when it is "based solely on, or to the
> extent [that it is] based on, the allegations or the
> factual showings of unauthorized use of . . .
> information or misappropriation of a trade secret.

Mortgage Specialists, 153 N.H. at 778 (quoting Burbank Grease,
693 N.W.2d at 100 n.12; citing Savor, Inc. v. FMR Corp., 812
A.2d 894, 898 (Del. Super. Ct. 2002); Frantz v. Johnson, 999
P.2d 351, 357 & n.3 (Nev. 2000); Weins, 605 N.W.2d at 492;
Ethypharm S.A. France v. Bentley Pharms., Inc., 388 F. Supp. 2d
426, 433 (D. Del. 2005); Bliss Clearing, 270 F. Supp. 2d at 946;
Auto Channel, Inc. v. Speedvision Network, LLC, 144 F. Supp. 2d

14

784, 789 (W.D. Ky. 2001)).  Finally, the New Hampshire Supreme
Court "agree[s] with courts that have concluded that a claim is
not preempted where the elements of the claim require some
allegation or factual showing in addition to that which forms
the basis for a claim of misappropriation of a trade secret."
Mortgage Specialists, 153 N.H. at 779 (citing Weins, 605 N.W.2d
at 492; Ethypharm, 388 F. Supp. 2d at 434-35; Powell Products,
Inc. v. Marks, 948 F. Supp. 1469, 1474 (D. Colo. 1996); Burbank
Grease, 693 N.W.2d at 100 n.12).

        In Mortgage Specialists, the court concluded that the
NHUTSA did preempt the plaintiff's state-law claims for
conversion and breach of fiduciary duty, see 153 N.H. at 780,
782, but did not preempt the plaintiff's claims for tortious
interference with advantageous relations and violation of the
CPA, see id. at 781.  Mortgage Specialists did not, however,
involve a claim for intentional misrepresentation.

        But, in Ethypharm, which is cited with approval in
Mortgagee Specialists, Judge Robinson was confronted with a
preemption argument, albeit under Delaware's Uniform Trade
Secrets Act, directed toward a fraud claim.  The court ruled
that the fraud claim was preempted:

        Plaintiffs assert that defendant and Belmac wrongly
        used plaintiffs' intellectual property and trade
        secrets and, while secretly doing so, defendant and
        Belmac were outwardly assuring plaintiffs that they

would never do anything to harm plaintiffs' interests.
Plaintiffs assert that these false statements,
assurances and omissions resulted in plaintiffs
permitting defendant and Belmac continued access to
plaintiffs' trade secrets and not taking immediate
legal proceedings in response to defendant and
Belmac's "theft, misuse and misappropriation" of
plaintiffs' intellectual property and trade secrets.
This claim is clearly grounded in the same facts which
support any misappropriation.  The DUTSA specifically
identifies misrepresentation as an improper means of
obtaining trade secrets.  6 Del. C. § 2001.  Thus, the
claim must be analyzed under the DUTSA.  See Auto
Channel, Inc. v. Speedvision Network, 144 F. Supp. 2d
784, 793 (W.D. Ky. 2001) (holding a claim of
misrepresented facts to induce the production of trade
secrets must be analyzed under the KUTSA); Weins v.
Sporleder, 605 N.W.2d 488, (S.D. 2000) (finding a
fraud claim was necessarily a part of the
misappropriation of a trade secret claim).

Ethypharm, 388 F. Supp. 2d at 434.  While the facts of Ethypharm

are not perfectly analogous to the facts of this case, they are

not far off.  Moreover, like the DUTSA, the NHUTSA specifically

identifies misrepresentation as an "improper means" of acquiring

a trade secret.  See RSA 350-B:1, I.  Accordingly, the reasoning

of Ethypharm applies to this case, and OneSky Trust's

misrepresentation claim is preempted by the NHUTSA.

### 2. Absence of Pecuniary Loss

Even if Count I is not preempted by the NHUTSA, Sullivan is

still entitled to judgment as a matter of law on OneSky Trust's

misrepresentation claim because OneSky Network cannot establish

the element of pecuniary loss.

16

"One who fraudulently makes a misrepresentation for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."  Tessier, 162 N.H. at 331-32 (quoting Gray v. First NH Banks, 138 N.H. 279, 283 (1994); citing Restatement (Second) of Torts § 525, at 55 (1977)) (internal punctuation omitted).

For purposes of summary judgment only, Sullivan concedes that he never intended to honor the settlement agreement he made with OneSky Network, which makes the broken promise in that agreement an actionable misrepresentation.  See Tessier, 162 N.H. at 332 ("Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable in deceit . . . .") (quoting Restatement (Second) of Torts § 530 cmt. c).  Moreover, the court will presume that Sullivan misrepresented his intent to abide by the agreement for the purpose of inducing OneSky Network to enter into it, and that OneSky Network's reliance on Sullivan's misrepresentation was justifiable.  Thus, the only question is whether, on the undisputed factual record, Sullivan is entitled to judgment as a matter of law that OneSky Trust cannot prove any pecuniary loss

that resulted from OneSky Network's reliance on Sullivan's

misrepresentation that he intended to abide by the terms of the

settlement agreement.

Sullivan argues that by relying on his misrepresentation,

OneSky Network did not suffer any harm but, rather, received two

benefits: (1) a settlement agreement enforceable as a contract;

and (2) an enforceable court order.  OneSky Trust describes

OneSky Network's harm this way:

> Here, the primary source of the damages that OneSky
> seeks to recover is the additional time that Mr.
> Sullivan had to use OneSky's confidential and trade
> secret information to develop his own business
> following his fraudulent agreement to dispose of that
> data in the court stipulation.  . . .  Had Mr.
> Sullivan not fraudulently induced OneSky Network to
> enter the court stipulation, he would not have been
> able to use OneSky Network's information to OneSky
> Network's detriment following the stipulation.
> Defendants also overlook the possibility that, had it
> known Mr. Sullivan would continue using confidential
> and trade secret information, OneSky might have
> persisted in the state court litigation and ultimately
> recovered a significant unjust enrichment award and/or
> negotiated a right to a royalty on Mr. Sullivan's
> profits from the improper use of the information.

Pl.'s Mem. of Law (doc. no. 58-1), at 5-6.  That argument is not

persuasive.

If Sullivan had told the truth, i.e., that he was planning

to execute the settlement agreement and then breach it, one must

presume that OneSky Network would not have entered into the

agreement.  While OneSky Trust argues that by entering into an

18

agreement with OneSky Network, Sullivan gained additional time
to use OneSky Network's confidential and trade-secret
information, it is difficult to see how the mere existence of
the agreement gave Sullivan any more time to do those things
than he would have had absent the agreement.  OneSky Trust does
not explain how OneSky Network would have been protected from
pecuniary loss any differently (or any better) by having no
agreement at all with Sullivan.  And, arguably, without an
agreement, Sullivan would have had even greater freedom to use
OneSky Network's information without the threat of an action for
breach of contract or contempt of court hanging over his head.

Similarly, the court can discern no logical basis for
OneSky Trust's argument that if Sullivan had not fraudulently
induced OneSky Network to enter into the settlement agreement,
"he would not have been able to use OneSky Network's information
to OneSky Network's detriment following the stipulation."
Again, OneSky Trust does not explain how the existence (or non-
existence) of an agreement with Sullivan had any effect one way
or the other on Sullivan's ability to use OneSky Network's
information.

OneSky Trust's remaining argument is also unavailing.  It
argues that if OneSky Network had known that Sullivan intended
to continue using its confidential and trade-secret information,

it might have persisted in its state-court litigation, and might have recovered an award for unjust enrichment or negotiated with Sullivan for a royalty on the profits he earned by using its information.  OneSky Trust does not, however, explain how the resolution of OneSky Network's state-court action resulted in a pecuniary loss.

If Sullivan has breached the settlement agreement, then, presumably, OneSky Trust is not bound by OneSky Network's agreement to release its claims against Sullivan because "a breach that is sufficiently material and important to justify ending the whole transaction is a total breach that discharges the injured party's duties," McNeal v. Lebel, 157 N.H. 458, 465 (2008) (quoting Fitz v. Coutinho, 136 N.H. 721, 725 (1993)). Thus, in the event of a breach by Sullivan, OneSky Trust would seem to be free to pursue all the claims OneSky Network asserted against Sullivan in state court.[3]  On the other hand, if the settlement agreement was superseded by the superior court order, then there are remedies available to OneSky Trust in state court

---

[3] If OneSky Trust was limited to remedies for breach of contract then, perhaps, it might be able to establish pecuniary loss, see Restatement (Second) of Torts § 530 cmt. c (identifying certain advantages to a tort action when a plaintiff claims that a defendant has made a promise while lacking the intention to keep it), but, as a legal matter, Sullivan's alleged breach would seem to put all of OneSky Network's state-court tort remedies back on the table.

for Sullivan's violation of that order.  Either way, OneSky

Trust has identified no basis for concluding that it is

foreclosed from pursuing any of the remedies originally

available in OneSky Network's state-court action against

Sullivan.  Accordingly, as a matter of law, OneSky Trust cannot

demonstrate any pecuniary loss resulting from OneSky Network's

agreement to release its claims against Sullivan in state court.

In sum, OneSky Trust has neither alleged nor produced any

evidence of pecuniary loss resulting from OneSky Network's entry

into a settlement agreement with Sullivan in reliance on his

false representation that he intended to comply with the terms

of that agreement.  OneSky Network may well have suffered

pecuniary losses resulting from Sullivan's breach of that

agreement, but that is a different matter; for a fraud claim to

lie, OneSky Network must have suffered losses resulting from

what it did in reliance on Sullivan's misrepresentation, and the

thing OneSky Network did was to enter into the agreement with

Sullivan.

OneSky Trust also asserts that in addition to taking the

affirmative action of entering into the settlement agreement

with Sullivan, OneSky Network was "lulled" into a false sense of

security and relied on Sullivan's misrepresentation to its

financial detriment by refraining from pursuing its state-court

action against him.  While OneSky network did stop prosecuting
its state-court claims against Sullivan, it is important to note
that after August 3, 2007, it was barred from doing so by court
order.  Thus, while OneSky Network entered into its agreement
with Sullivan in reliance on Sullivan's misrepresentation, it
did not refrain from pursuing its state-court claims in reliance
on Sullivan's misrepresentation.  In any event, as the court has
already explained, OneSky Trust cannot show a pecuniary loss
because it has not shown that it has lost the ability to pursue
any of the remedies that OneSky Network initially sought in its
state-court action.

A person charged with fraud "is subject to liability . . .
in deceit for pecuniary loss."  Tessier, 162 N.H. at 332.
OneSky Trust has identified no pecuniary loss to OneSky Network
resulting from Sullivan's misrepresentation.  For that reason,
OneSky Trust has not stated a claim for intentional
misrepresentation.

Because OneSky Trust's fraud claim is preempted by the
NHUTSA, and, in any event, fails to adequately allege pecuniary
loss, Sullivan is entitled to judgment as a matter of law on
Count I.

B. Consumer Protection Act

In Count II, OneSky Trust asserts that Sullivan violated
the New Hampshire CPA by violating the court order that resulted
from the settlement agreement and by engaging in acts of
deception to conceal his violation of the court order.  Sullivan
argues that Count II is both preempted by the NHUTSA and barred
by the Noerr-Pennington doctrine.  In addition to arguing that
Sullivan waived his preemption defense, an argument the court
has already rejected, OneSky Trust contends that: (1) Sullivan's
preemption defense is meritless; and (2) the Noerr-Pennington
doctrine is inapplicable to the facts of this case.  Sullivan's
preemption defense carries the day.

In Mortgage Specialists, the plaintiff sued two of its
former employees for, among other things, misappropriating
certain confidential business information.  See 153 N.H. at 768.
It asserted a claim under the NHUTSA as well as a claim under
the CPA.  See id. at 772.  The trial court granted the
defendants' motion to dismiss the CPA claim, ruling that it was
preempted by the NHUTSA.  See id. at 773.  The New Hampshire
Supreme Court reversed the dismissal of the CPA claim, and
explained its decision in the following way:

> Like Mortgage Specialists' tortious interference
> claim, its claim for violation of the CPA is not based
> solely upon the defendants' alleged misuse of Mortgage
> Specialists' customer information.  This claim is

23

> supported by the allegation that Carbone informed
> Mortgage Specialists' customers that it was not
> properly licensed in the State.  Thus, to the extent
> that the CPA claim is supported by more than the mere
> misuse of customer information, it is not preempted.

Id. at 781.

Here, OneSky Trust's complaint frames the CPA claim as

being based on Sullivan's violation of the court order, which

required him to return, and not to use, OneSky Network's

information.  In its objection to summary judgment, OneSky Trust

argues:

> In Mortgage Specialists, the New Hampshire Supreme
> Court found that the plaintiff's R.S.A. 358-A claim
> was not preempted because the defendants used the
> information they stole to contact plaintiff's
> customers and persuade them to do business with
> defendants instead.  This case is similar because
> OneSky's allegations are that Mr. Sullivan used OneSky
> Network's customer database in violation of a
> stipulated court order to gain an unfair business
> advantage in soliciting customers.  Thus, like the
> claim in Mortgage Specialists, OneSky's RSA 358-A
> claim should not be preempted.

Pl.'s Mem. of Law (doc. no. 58-1), at 12-13 (citation omitted).

In Mortgage Specialists, however, the CPA claim did not survive

NHUTSA preemption because the plaintiff alleged misuse of its

information by the defendants; the claim survived because it was

"not based solely upon the defendants' alleged misuse of [the

plaintiff's] customer information."  153 N.H. at 781 (emphasis

added).  That is, the CPA claim survived because it involved an

"allegation or factual showing in addition to that which

24

form[ed] the basis for a claim of misappropriation of a trade secret," id. at 779, specifically, an allegation that one of the defendants disparaged the plaintiff by informing the plaintiff's "customers that [the plaintiff] was not properly licensed in the State," id. at 781.  Unlike the plaintiff in Mortgage Specialists, OneSky Trust has made no allegations beyond its claim that Sullivan misused OneSky Network's trade secrets.[4] Accordingly, OneSky Trust's CPA claim is preempted by the NHUTSA.

Because OneSky Trust's CPA claim is plainly preempted by the NHUTSA, Sullivan is entitled to judgment as a matter of law on Count II, and the court need not reach his Noerr-Pennington argument.

### C. Unjust Enrichment

In Count III, OneSky Trust asserts that Sullivan should be required to disgorge any financial benefits he obtained as a result of violating the court order.  Sullivan argues that: (1) because the factual predicate for OneSky Trust's unjust enrichment claim is his use of OneSky Network's confidential

---

[4] OneSky Trust does allege that Sullivan "engage[d] in acts of deception and concealment to cover-up his unlawful retention and use of 'OneSky's intellectual property,' " Ver. Compl. ¶ 45, but the court has no difficulty concluding that covering up the misappropriation of a trade secret is not sufficiently distinct from the misappropriation itself to escape preemption.

25

information, that claim is also preempted by the NHUTSA; (2) the
equitable doctrine of unjust enrichment is not available because
OneSky Trust has three adequate remedies at law, i.e., an action
for breach of contract, an action under the NHUTSA, and a motion
for civil contempt sanctions in the New Hampshire Superior
Court.

OneSky Trust counters Sullivan's preemption argument by
contending that: (1) it has alleged not only that Sullivan
misappropriated OneSky Network's information, but that, in
addition, he used that information to his financial benefit; and
(2) the conduct on which it bases its equitable claim,
Sullivan's misuse of its information to solicit customers, is
independent from the conduct that would support a claim for
breaching the settlement agreement or violating the court order.
OneSky Trust also contends that it may pursue its claim for
unjust enrichment in the alternative to other theories of
recovery.[5]  Sullivan's argument based on NHUTSA preemption is
meritorious and dispositive.

_____

[5] In New Hampshire, "[i]t is a well-established principle
that the court ordinarily cannot allow recovery under a theory
of unjust enrichment where there is a valid, express contract
covering the subject matter at hand."  Clapp v. Goffstown Sch.
Dist., 159 N.H. 206, 210-11 (2009) (citations omitted).  But,
given that the agreement at issue here did not set any rate of
compensation for Sullivan's use of OneSky's information, it does
not appear that an award of restitution for unjust enrichment in

"Restitution and quantum meruit recovery based upon 'unjust enrichment are allowed by the courts as alternative remedies to an action for damages for breach of contract.'" Gen. Insul. Co. v. Eckman Constr., 159 N.H. 601, 611 (2010) (quoting 26 R. Lord, Williston on Contracts § 68:1, at 5 (4th ed. 2003); citing Kondrat v. Freedom Sch. Bd., 138 N.H. 683, 686 (1994)).  In New Hampshire, "[a] plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit." General Insulation, 159 N.H. at 611 (quoting Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., 145 N.H. 158, 163 (2000)). Moreover,

> [t]he party seeking restitution must establish not only unjust enrichment, but that the person sought to be charged had wrongfully secured a benefit or passively received one which it would be unconscionable to retain, and unjust enrichment generally does not form an independent basis for a cause of action.

General Insulation, 159 N.H. at 611 (quoting 42 C.J.S. Implied Contracts § 10, at 17 (2007); citing Kowalski v. Cedars of Portsmouth Condo. Ass'n, 146 N.H. 130, 133 (2001)).

In Ethypharm, on which the New Hampshire Supreme Court relied in Mortgage Specialists, the United States District Court

---

this case would impermissibly "supplant the terms of an agreement." Id. (citation omitted).

for the District of Delaware was presented with a UTSA preemption defense to an unjust enrichment claim.  It disposed of the claim this way:

> The third count of the complaint alleges unjust enrichment.  Plaintiffs allege that Belmac's misappropriation of plaintiffs' technology, trade secrets and other intellectual property allowed Belmac to "enter the marketplace and compete on equal footing with plaintiffs and others, without incurring the considerable expense of developing an efficient and effective manufacturing process of its own."  In addition, plaintiffs assert that Belmac's actions deprived plaintiffs of the opportunity to benefit from their own production process.  This claim is based entirely on the same facts which purportedly support the misappropriation of trade secrets and, thus, is displaced by the DUTSA.

Ethypharm, 388 F. Supp. 2d at 434; see also Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (granting summary judgment to defendant on unjust enrichment claim where that claim was "based on the identical facts alleged in [the] claim for misappropriation of trade secrets"); cf. Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-CV-488-JL, 2009 WL 3255218, at *9 (D.N.H. Oct. 7, 2009) (agreeing with parties that unjust enrichment claim was preempted by NHUTSA).

The reasoning of Ethypharm counsels in favor of ruling that OneSky Trust's unjust enrichment claim is preempted by the NHUTSA.  The only conduct alleged in Count III of the verified complaint is Sullivan's use of OneSky Network's information "to solicit OneSky customers and prospects in violation of a

28

Stipulated Court Order."  Ver. Compl. ¶ 49.  That same conduct
is alleged in support of the CPA claim that is preempted by the
NHUTSA.  See Ver. Compl. ¶ 45.  If that conduct is insufficient
to support OneSky Trust's CPA claim in the face of a preemption
challenge, it must, necessarily, be insufficient to support
OneSky Trust's unjust enrichment claim.

　　　In addition, the court notes both the general rule that
"unjust enrichment generally does not form an independent basis
for a cause of action," General Insulation, 159 N.H. at 611
(citation omitted), and the fact that damages under the NHUTSA
"can include both the actual loss caused by misappropriation and
the unjust enrichment caused by misappropriation that is not
taken into account in computing actual loss," RSA 350-B:3, I.
The availability of damages based on unjust enrichment under the
NHUTSA and the general unavailability of unjust enrichment as an
independent cause of action both strongly support a
determination that OneSky Trust's claim for unjust enrichment is
preempted.

　　　In its objection to summary judgment, OneSky Trust relies
on Glynn v. EDO Corporation, 641 F. Supp. 2d 476 (D. Md. 2009),
in which Judge Motz applied the NHUTSA, but that case is
distinguishable.  There, a former employee was alleged to have
stolen "proprietary and confidential information that could

assist him in developing products similar to those he worked on"
for his former employer.  Id. at 484.  He argued that the unjust
enrichment claim against him was preempted.  The court
disagreed, on grounds that "the claim for unjust enrichment
[was] 'premised on wrongdoing over and above' the
misappropriation or misuse of IST's information."  Id. (quoting
Virtual Cloud Servs., Inc. v. CH2M Hill, Inc., No. 02-CV-01004,
2006 WL 446077, at *3 n.3 (D. Colo. Feb. 21, 2006)).  As the
court explained:

> IST alleges several wrongful acts not based solely on
> the use of IST's information which could have unjustly
> benefitted Glynn and Saltwhistle, including making
> disparaging and false statements about IST's products,
> soliciting IST employees, customers, and vendors, and
> usurping IST's business opportunities.  This claim is
> therefore not preempted by the NHUTSA and the motion
> to dismiss this count is denied.

Glynn, 641 F. Supp. 2d at 484-85.  While the "wrongdoing over
and above" the misuse of IST's information included the
solicitation of customers, which makes Glynn appear to be
analogous to this case, the misappropriated information in Glynn
was technical information related to product development, see
id. at 484, not information about customers, which brings the
solicitation of customers outside the ambit of the alleged
misappropriation in that case.  Here, by contrast, where the
purloined information consisted of customer and prospect lists,

the use of the misappropriated information does not fall beyond the scope of NHUTSA preemption.

Because OneSky Trust's claim for unjust enrichment is based exclusively on financial gains that resulted from Sullivan's misappropriation of OneSky Network's confidential information, that claim is preempted by the NHUTSA.  Accordingly, Sullivan is entitled to judgment as a matter of law on Count III.

### D. Enhanced Compensatory Damages

In Count IV, OneSky Trust asserts that it is entitled to enhanced compensatory damages because Sullivan's actions were wanton, malicious, and oppressive.  Sullivan argues that he is entitled to summary judgment on Count IV because OneSky Trust's request for enhanced compensatory damages: (1) is preempted by the NHUTSA; and (2) is not a free-standing cause of action but a remedy, and, more importantly, a remedy for causes of action on which OneSky Trust has not prevailed.  OneSky Trust contends that Count IV survives to the extent that Counts II and III survive.  Because Sullivan is entitled to judgment as a matter of law on the claims stated in Counts II and III, he is also entitled to judgment as a matter of law on Count IV.

### E. Larceny

In Count V, OneSky Trust asserts that Sullivan committed "fraud and larceny pursuant to federal and state statutes,

including, but not limited to [ ]11 U.S.C. §523(a)(4)." Ver.
Compl. ¶ 59. Sullivan argues that he is entitled to summary
judgment on Count V because: (1) OneSky Trust's larceny claim is
preempted by the NHUTSA; and (2) the federal statute OneSky
Trust cites in Count V, which declares debts from embezzlement
and larceny to be nondischargeable in bankruptcy, does not
create a private cause of action for larceny. In response,
OneSky Trust: (1) asks the court to construe Count V as
asserting a claim for common-law embezzlement; (2) explains that
the purpose of asserting a claim for embezzlement is to protect
any recovery to which it might be entitled in this case in the
event that Sullivan seeks bankruptcy protection; and (3)
contends that because embezzlement is not just conversion, but
conversion with a fraudulent intent, claims for embezzlement are
not preempted by the NHUTSA. The court does not agree.

OneSky Trust draws the elements of embezzlement from
Sherman v. Potapov (In re Sherman), 603 F.3d 11 (1st Cir. 2010).
In that opinion, the First Circuit explained:

> Embezzlement is "the fraudulent conversion of the
> property of another by one who is already in lawful
> possession of it." [United States v. Young, 955 F.2d
> 99,] 102 [(1st Cir. 1992)] (internal quotation marks
> omitted). Thus, to amount to embezzlement, conversion
> must be committed by a perpetrator with fraudulent
> intent . . . . Young is helpful again, in its example
> of embezzlement by using entrusted money for the
> recipient's own purposes in a way he knows the
> entrustor did not intend or authorize. Id. It is

32

knowledge that the use is devoid of authorization,
<u>scienter</u> for short, <u>see</u> <u>Palmacci v. Umpierrez</u>, 121
F.3d 781, 786 (1st Cir. 1997), that makes the
conversion fraudulent and thus embezzlement . . .

<u>Id.</u> at 13.  Conversion, in turn, "is an intentional exercise of

dominion or control over a chattel which so seriously interferes

with the right of another to control it that the actor may

justly be required to pay the other the full value of the

chattel."  <u>Restatement (Second) of Torts</u> § 222 A(1).  As the

court has already noted, in <u>Mortgage Specialists</u>, the New

Hampshire Supreme court held that the plaintiff's conversion

claim was preempted by the NHUTSA.  <u>See</u> 153 N.H. at 780.

The court begins by identifying a fundamental problem with

OneSky Trust's embezzlement claim.  Under the definition of

embezzlement on which OneSky Trust relies, an embezzler is "one

who is already in lawful possession" of the property he or she

embezzles.  <u>Sherman</u>, 603 F.3d at 13.  Given OneSky Trust's

allegations concerning Sullivan's confidentiality agreement with

OneSky Network during the course of his employment, the only

reasonable inference to be drawn is that when OneSky Network

terminated Sullivan's employment, he lost the ability to

lawfully possess OneSky Network's lists of customers and

prospects.  But, OneSky Trust states very clearly in its

verified complaint that "OneSky makes <u>no</u> claim in this complaint

for damages arising out of Sullivan's conduct while an employee

at OneSky . . . ."  Ver. Compl., at 3 n.1 (emphasis added).  If one cannot embezzle what one does not lawfully possess, and OneSky Trust alleges that Sullivan's embezzlement occurred at a time when he did not lawfully possess OneSky Trust's property, then it would certainly appear that OneSky Trust has failed to state a claim for embezzlement.[6]

Even if OneSky Trust had properly stated a claim for embezzlement, however, that claim would be preempted by the NHUTSA.  In OneSky Trust's view, because embezzlement consists of conversion plus scienter, scienter is an element in addition to those necessary to prove trade-secret misappropriation under RSA chapter 350-B, which takes the claim stated in Count V outside the scope of the NHUTSA's preemption provision under the principles described in Mortgage Specialists.  That argument would have considerably more force if the NHUTSA itself specifically limited trade-secret misappropriation to simple conversion, but the statute defines misappropriation rather more broadly than that.

Moreover, OneSky Trust's mechanical application of Sherman's description of embezzlement as conversion plus

---

[6] Moreover, given the requirement of lawful possession of the victim's property at the time of embezzlement, OneSky Trust might also face a statute-of-limitations problem vis-à-vis its embezzlement claim.

scienter, in an entirely different legal context, seems to go against the non-formalist approach to NHUTSA preemption analysis that the New Hampshire Supreme Court called for in Mortgage Specialists.  See 153 N.H. at 778.  It is more consistent with Mortgage Specialists to read Sherman as defining embezzlement as a subset of conversion, i.e., conversion committed by one who has lawful possession of the property in question and knowledge that his or her use of that property was not authorized by the owner.  Given that "the UTSA 'was meant to codify all the various common law remedies for theft of ideas,'" Mortgage Specialists, 153 N.H. at 776 (quoting Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000)), it is difficult to see any basis for carving out the subset of conversion that qualifies as embezzlement and giving claims for that particular form of conversion special protection from preemption.

Even if the court were to adopt OneSky Trust's characterization of embezzlement as conversion plus scienter, the addition of scienter to the elements of conversion does not make the factual underpinning of OneSky Trust's embezzlement claim different enough from a conversion claim to spare it from the preclusive effect of the NHUTSA.  As the court has already noted, Mortgage Specialists stands for the proposition that "a

claim is not preempted where the elements of the claim require some allegation or factual showing in addition to that which forms the basis for a claim of misappropriation of a trade secret." 153 N.H. at 779 (citations omitted). In that case, the court held that the plaintiff's "claim [for conversion was] preempted by the NHUTSA because it [was] based entirely upon the misappropriation of customer information." Id. at 780. By contrast, the court held that claims for tortious interference with advantageous relations and violation of the CPA were not preempted. Id. at 781. The factual showings supporting the tortious interference claim included allegations that, in addition to misusing the plaintiff's customer information, the defendants attempted to poach the plaintiff's customers by telling them that the plaintiff was not properly licensed, and also attempted to poach the plaintiff's employees. Id. The CPA claim in Mortgage Specialists was supported by the customer-poaching allegation described above. Id. The question here is whether the showing of scienter necessary to support an embezzlement claim is the legal equivalent of the additional allegations supporting the tortious interference and CPA claims in Mortgage Specialists. It is not.

The additional allegations that precluded the preemption of the tortious interference and CPA claims in Mortgage Specialists

involved conduct by the defendants that was different from the conduct underlying the NHUTSA claim.  Here, by contrast, both conversion and embezzlement involve the same conduct, the exercise of dominion or control over the chattel of another. All that distinguishes the two causes of action is the legal right of the embezzler to possess the property in question, and his or her knowledge of the limits of the owner's authorization to use his or her property.

Garden-variety conversion claims are preempted by the NHUTSA.  See Mortgage Specialists, 153 N.H. at 780.  This court can discern no reason why the New Hampshire Supreme Court would rule that a claim "based entirely upon the misappropriation of customer information," id., would be preempted by the NHUTSA, but a claim based on the misappropriation of customer information would not be preempted merely because the misappropriator had the right to possess that information or used it in a way that he or she knew was not authorized by the owner of that information.  Disregarding the distinction on which OneSky Trust relies, the one between simple conversion and conversion with scienter, the court's conclusion is consistent with NHUTSA's preemption provision, which establishes exceptions from preemption, but only for contractual remedies, other civil remedies based on conduct other than misappropriation, and

criminal remedies.  See RSA 350-B:7, II.  The legislature could have created an additional exception from preemption for misappropriation committed with scienter, but it did not.  In sum, like any other claim for conversion, OneSky Trust's claim for embezzlement is preempted by the NHUTSA.

Because Count V fails to state a claim for embezzlement or states a claim that is preempted by the NHUTSA, Sullivan is entitled to judgment as a matter of law on Count V.

### F.  Fraudulent Conveyance

In Count VI, OneSky Trust asserts that Justin and Marianne Sullivan fraudulently conveyed property into the Marianne Sullivan Revocable Trust of 2009 because they made that conveyance with an actual intent to hinder OneSky Network's ability to recover from Sullivan, in violation of Massachusetts law.  On that basis, OneSky Trust asks the court to avoid that "transfer to the extent necessary to satisfy OneSky's claim pursuant to NH RSA 545-A:7 and/or M.G.L. c109A Sec. 8."  Ver. Compl. ¶ 64.  Because Sullivan is entitled to judgment as a matter of law on all the claims stated in Counts I-V, there are no claims to satisfy, which means that defendants are, necessarily, entitled to judgment as a matter of law on Count VI.

**Conclusion**

For the reasons described above, defendants' motion for summary judgment, document no. 55, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

January 17, 2012

cc:  Coleen M. Penacho, Esq.
     Edward J. Sackman, Esq.
     Andrew R. Shulman, Esq.
     Andru H. Volinsky, Esq.
     Gretchen Leah Witt, Esq.